VERONICA McCARTHY *v.* NUTMEG PLUMBING SUPPLY COMPANY

SUPERIOR COURT     FAIRFIELD COUNTY AT DANBURY     FILE No. 98411

Memorandum filed July 9, 1956.

*George, Hull & Pinney,* of Danbury, for the plaintiff.

*Pullman, Comley, Bradley & Reeves,* of Bridgeport, for the defendant.

KING, J. This is an appeal from a finding and award of the workmen's compensation commissioner in favor of the claimant.

No attack is made on the subordinate facts in the finding, the sole ground of appeal being that the ultimate conclusion, which is found in paragraph 12 of the finding and award, is without support in the subordinate facts. This conclusion, in effect, is that the injury arose out of and in the course of the employment. In oral argument in this court, the respondent quite properly conceded that the injury arose in the course of the employment. Thus, the sole question determinative of this appeal is whether the subordinate facts legally support the ultimate conclusion that the injury arose out of the employment. It should not be overlooked that this is a much narrower claim than that stated by the commissioner in paragraph 9 of the finding and award.

The paragraphs of the finding relevant to the solution of this question are paragraphs 4 and 10. These make clear that the claimant injured her neck while turning it quickly to the left to answer a remark directed to her by a customer, as he was leaving the office in which she was employed. She had just finished verifying an invoice of this customer, a task admittedly within the scope of her duties in the office. The commissioner, in paragraph 10, found that in this quick turning of the head the claimant "experienced an untoward event or condition not expected, which immediately caused her neck pain."

The argument of the employer was based, not on the ground that the quick turning of the head was not a proximate cause of the injury, but on the ground that this was something which might as well have happened anywhere else and, so, did not arise out of the employment. The respondent based its

claim upon the cases of *Coffee* v. *Coffee Laundries, Inc.,* 108 Conn. 493, 496; *Porter* v. *New Haven,* 105 Conn. 394, 397; *Savage* v. *St. Aeden's Church,* 122 Conn. 343, 346; *Reynolds* v. *Rider Dairy Co.,* 125 Conn. 380, 385, and *Niedzwicki* v. *Pequonnock Foundry,* 133 Conn. 78, 83.

In *Porter* v. *New Haven,* supra, there was obviously no connection between the employment and the assault by a stranger. There was likewise an utter absence of such a connection in *Coffee* v. *Coffee Laundries, Inc.,* where angina pectoris was claimed to have been lighted up by claimant's excitement and anger while a witness in court proceedings. Neither case is in point. Nor are we concerned with cases involving occupational disease, as in *Niedzwicki* v. *Pequonnock Foundry,* supra. The definition of occupational disease (General Statutes § 7416) in terms involves only "a disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such." Thus, the "special hazards" test is in effect included in the definition of occupational disease. *LeLenko* v. *Wilson H. Lee Co.,* 128 Conn. 499, 504. No such language appears in the definition of the phrase "arising out of and in the course of his employment" as given in the same section, which of course applies to a case such as this, involving an accidental personal injury which can be definitely located as to place and time.

The gist of the respondent's claim is that the claimant would have been as likely suddenly to turn her head at any other place as at her employment and, so, that the injury resulting from the sudden turning of her head could not have been found to arise "out of" the employment since no special hazard of the employment was a causative factor. The fundamental vice in this claim is that it constitutes an attempt to insert the "special hazards"

test, which is by statute applicable to occupational disease, in the test for an accidental personal injury. There is no justification for such a claim, and it finds no support in any of the cases cited by the respondent. It is true that the "special hazards" test is still used in "exposure" cases, such as *Reynolds* v. *Rider Dairy Co.,* supra, and *Gesmundo* v. *Bush,* 133 Conn. 607, 613. However, the instant case can by no stretch of the imagination be called an "exposure" case. Nor should it be overlooked that while many "exposure" cases have involved claims of employees whose duties required the operation of motor vehicles on the highways, the "special hazards" test has not been used in claims arising from outright personal injuries sustained in automobile collisions by employees while engaged in the performance of duties which required them to ride in, or operate, vehicles on the public highways. *Swanson* v. *Latham,* 92 Conn. 87, 91; *Taylor* v. *M. A. Gammino Construction Co.,* 127 Conn. 528, 533; *Howe* v. *Watkins Bros.,* 107 Conn. 640, 644.

If this claim of the respondent should prevail, it would amount to a judicial removal from coverage under our Workmen's Compensation Act of many, if not most, accidental personal injuries not actually caused by moving machinery in a factory. "An injury which occurs in the course of the employment ordinarily arises out of the employment, because the fact that the employee is in the course of his employment is the very thing which subjects him to the risks which are incident to the employment." *Savage* v. *St. Aeden's Church,* 122 Conn. 343, 347.

The law is not that "the conditions of the employment must be such as to expose the employee to extraordinary risks [i.e. special hazards] in order to entitle him to compensation in case of injury. The risk may be no different in degree or kind than those

204

to which he may be exposed outside of his employment. The injury is compensable, not because of the extent or particular character of the hazard, but because it exists as one of the conditions of the employment." *Savage v. St. Aeden's Church,* supra, 348; *Fiarenzo v. Richards & Co.,* 93 Conn. 581, 585; *Puffin v. General Electric Co.,* 132 Conn. 279, 281.

Here the sudden turning of the claimant's head was done in a bona fide and reasonable effort to further her employer's interests. Quite properly the respondent makes no claim that the accidental injury was incidental to any departure from the employment for the furtherance of private personal interests of the claimant, as in the non-compensable "horseplay" cases. *Willis v. Taylor & Fenn Co.,* 137 Conn. 626, 627; see also such cases as *Herbst v. Hat Corporation of America,* 130 Conn. 5, 7. Here the sudden turning of the head, which directly caused the neck injury, "was a natural and necessary incident or consequence of the employment, or of the conditions under which it was carried on, though not foreseen or expected." *Kelliher v. New Haven Clock Co.,* 121 Conn. 528, 533. It thus arose out of the employment even though some other occasion, outside of working hours, and off the employer's premises, might have produced the same result by the same mechanism. Indeed, this is probably the case with most falls on an employer's premises where conditions probably more nearly approach actual safety than in the average home. *Savage v. St. Aeden's Church,* supra, 349; *Stankewicz v. Stanley Works,* 139 Conn. 215, 217.

It cannot be said that the commissioner's conclusion that the claimant's injury arose out of her employment was so illogical or unreasonable as to require judicial intervention. It follows that the finding and award must stand.

The appeal is dismissed and the award affirmed.